UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| GREGORY MARSHAL TURCOTTE, | ) |
| | ) |
|     Plaintiff | ) |
| | ) |
| v. | )    1:11-cv-00377-GZS |
| | ) |
| SOCIAL SECURITY ADMINISTRATION COMMISSIONER, | ) |
| | ) |
|     Defendant | ) |

**REPORT AND RECOMMENDED DECISION**

The Social Security Administration denied Gregory Turcotte's application for disability insurance and supplemental security income benefits under Title II and Title XVI of the Social Security Act. Turcotte commenced this civil action to obtain judicial review. I recommend that the Court remand for further proceedings.

**The Administrative Findings**

The Commissioner's final decision is the May 25, 2011, decision of Administrative Law Judge Paul Murphy because the Appeals Council did not find cause to review the ALJ's decision. (R. 1, 5, ECF No. 10-2.) At step 1 of the sequential evaluation process, the ALJ found that Turcotte has not engaged in substantial gainful activity since date of alleged onset of disability. (R. 11-12, ¶ 2.) At step 2, the ALJ found that Turcotte has both mental and physical impairments that qualify as severe for social security disability-related purposes. Turcotte's mental and physical limitations arise as a result of an organic brain injury and shortened left lower extremity and left-sided hemiparesis secondary to "shaken baby syndrome." (R. 11, ¶ 3; R. 17; Ex. 1F.) At step 3, the Judge found that the limitations resulting from these impairments do not meet or equal any listing in the Commissioner's Listing of Impairments, Appendix 1 to 20

C.F.R. Part 404, Subpart P. The ALJ considered the organic brain disorder in light of listing 12.02 and found that the listing was not met under either the "paragraph B" or "paragraph C" criteria of the listing. (R. 11-12, ¶ 4.) Prior to further evaluation at steps 4 and 5, the Judge assessed Turcotte's residual functional capacity and found that the record supported a finding that Turcotte can perform the full range of simple, unskilled, sedentary work. (R. 13, ¶ 5.) Given Turcotte's youth (born in 1987), high-school degree, and ability to communicate in English, this RFC led to a step 5 finding that Turcotte is not disabled pursuant to the Commissioner's Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, § 201.27. (R. 20, ¶ 10.)

### DISCUSSION OF PLAINTIFF'S STATEMENT OF ERRORS

The Court must affirm the administrative decision so long as it applies the correct legal standards and is supported by substantial evidence. This is so even if the record contains evidence capable of supporting an alternative outcome. Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. Richardson v. Perales, 402 U.S. 389, 401 (1971); Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

Turcotte's severe impairments secondary to shaken baby syndrome are organic brain disorder, shortened left lower extremity, and left-side hemiparesis. The ALJ found that despite these impairments Turcotte has a residual functional capacity that allows for a finding of "not

disabled" by direct application of section 201.27 of the Commissioner's Medical-Vocational Guidelines, Appendix 2, also known as the "Grid."[1] Turcotte presses two challenges. First, Turcotte argues that the ALJ erred in his step 5 finding because the ALJ directly applied the Grid even though the record indicates that Turcotte has nonexertional limitations that prevent him from performing the full range of sedentary occupations. (Statement of Errors at 3-9, ECF No. 14.) Second, Turcotte argues that the ALJ should have discussed at greater length the question of Turcotte's ability to perform substantial gainful activity "on a regular and continuing basis," citing 20 C.F.R. §§ 404.1545(b), (c), 416.945(b), (c). (Id. at 10-13.) Turcotte's first argument suffices to support a remand.

The record reflects that Turcotte is able to walk but has reduced range of motion in his left hip, an antalgic gait due to a shortened left leg, and left-side hemiparesis. Turcotte reports that he experiences pain when he stands on his left leg for prolonged periods. The expert assessments of Turcotte's physical RFC are varied. Richard Chamberlin, M.D., has indicated that Turcotte has a capacity for light exertion and can work over the course of an eight-hour workday standing or walking for up to six hours and seated for up to six hours. Dr. Chamberlin

---

[1] See Ortiz v. Sec'y of HHS, 890 F.2d 520, 523 (1st Cir. 1989) (some internal quotation marks and citation omitted):

> [U]nder the final test in the five-stage sequential analysis, . . . the Secretary has the burden of proving the existence of other jobs in the national economy that the claimant can perform. 20 C.F.R. § 404.1520(f) (1988). The Grid is designed to enable the Secretary to satisfy this burden in a streamlined fashion without resorting to the live testimony of vocational experts. Yet the Grid is "predicated on an individual's having an impairment which manifests itself by limitations in meeting the *strength* requirements of jobs. . . ." 20 C.F.R. § 404, Subpart P, App. 2, § 200.00(e) (1988) (emphasis added). Accordingly, where a claimant has one or more non-strength limitations, "the Guidelines do not accurately reflect what jobs would or would not be available." Gagnon v. Secretary of Health and Human Services, 666 F.3d 662, 665 n. 6 (1st Cir. 1981). In cases where a nonexertional impairment significantly affects claimant's ability to perform the full range of jobs he is otherwise exertionally capable of performing, the Secretary must carry his burden of proving the availability of jobs in the national economy by other means, typically through the use of a vocational expert. On the other hand, should a nonexertional limitation be found to impose no significant restriction on the range of work a claimant is exertionally able to perform, reliance on the Grid remains appropriate.

also assessed that Turcotte can push/pull with his left lower extremity on an occasional basis, with up to twenty pounds resistance, and that Turcotte's capacity to climb ramps or stairs, balance, kneel, and crawl are reduced to an occasional basis. Ladders, ropes, and scaffolds are ruled out. Dr. Chamberlin also opined that Turcotte must avoid even moderate exposure to hazards such as machinery and heights. (Ex. 10F.) Robert Hayes, D.O., opined that Turcotte has a capacity for medium exertion and can work on his feet for up to six hours and be seated for up to six hours. In addition, Dr. Hayes assessed an ability to climb only occasionally and a need to avoid concentrated exposure to hazards such as machinery and heights. (Ex. 13F.) Finally, Maria Noval, M.D., assessed Turcotte's exertional capacity as light, but also indicated that Turcotte should not be seated for more than two hours and may need to lie down once or twice per workday. She, too, ruled out crawling and ladders and assessed a capacity for occasional stairs. Dr. Noval also opined that Turcotte could not perform sustained work activity on a regular and continuing basis. (Ex. 17F.)

The ALJ determined that Turcotte "is properly restricted to work at the sedentary exertional level." (R. 17.) This finding departs from the expert RFC assessments and Dr. Noval's medical source statement. However, the decision to place Turcotte in the sedentary category is supported by evidence that a reasonable mind might accept as adequate to support a finding. Two experts have assessed a capacity for up to six hours of sitting and a capacity for greater physical exertion than would be required in a sedentary occupation. Additionally, George Kousaie, D.O., performed a physical examination of Turcotte and indicated in his medical source statement that he sees work capacity that favors sitting over standing. (Ex. 12F, R. 383.) Finally, Turcotte himself indicated that prolonged standing causes him pain. It was reasonable for the ALJ to place Turcotte in the sedentary category rather than the light category,

let alone the medium category. The ALJ gave acceptable reasons for the decision to place Turcotte in the sedentary category. I also note that Turcotte does not contend it was error to place him in the sedentary category, only that the RFC finding should include non-exertional limitations and more elaborate discussion of his ability to perform sustained work on a regular and continuing basis.

The non-exertional limitations do present something of a quandary. Every expert who provided an RFC opinion or medical source statement assessed non-exertional limitations. The ALJ found that all of these non-exertional limitations could be accounted for by restricting Turcotte to simple and sedentary work. Ultimately, I conclude that there is substantial evidence in support of the decision to place Turcotte in the simple and sedentary work categories, but not in support of the lay conclusion that doing so will resolve all of the expert concerns over non-exertional limitations. The ALJ might have called a medical expert to see if he could obtain expert testimony in support of this lay assessment and/or a vocational expert to address the extent to which the non-exertional limitations in question would erode the sedentary work base. Alternatively, the ALJ might have explained why the non-exertional limitations would not erode the sedentary occupational base. Instead, the ALJ transmuted the medical expert findings into an unendorsed RFC that would permit direct application of the grids, thereby avoiding any consideration of the impact of specific non-exertional limitations in connection with sedentary occupations.

Although it may appear unlikely that Turcotte will be found disabled on remand, it is important that the Commissioner properly develop the record and/or the analysis. For instance, it is possible that medical experts or vocational experts who testify at hearing will provide testimony favorable to the claimant. An ALJ is not required to call experts in every case, but an

ALJ also is not entitled to judge matters entrusted to experts. As for presenting a legal analysis, the Court is in the position of reviewing the decision actually made by the Commissioner and it should not be expected to independently develop a legal argument in support of the Commissioner's finding. See Steele v. Barnhart, 290 F.3d 936, 941 (7th Cir. 2002) ("[P]rinciples of administrative law require the ALJ to rationally articulate the grounds for her decision and confine [courts'] review to the reasons supplied by the ALJ. That is why the ALJ (not the Commissioner's lawyers) must build an accurate and logical bridge from the evidence to her conclusion.") (citations and internal quotation marks omitted).[2] The Commissioner's counsel did attempt to reassure the Court with citations to several case authorities and to Social Security Ruling 85-15, but those authorities do not supply the bridge that is missing in this case. For example, in Garcia-Martinez v. Barnhart, 111 Fed. Appx. 22 (1st Cir. 2004) (per curiam, unpublished), the First Circuit held that application of the grids was not erroneous where the claimant's RFC called for routine, repetitive work that did not involve undue pressure or interactions with the public, but the claimant had a capacity to perform occupations in every exertional category. Similarly, in Hayes v. Astrue, No. 2:10-cv-42-DBH, this Court affirmed a finding of not disabled where there were non-exertional limitations, but the RFC in that case was for a subset of light work (which is a more expansive job category than sedentary work, 20 C.F.R. § 416.967(b)) and the ALJ called upon a vocational expert. 2010 WL 5348757, 2010 U.S. Dist. Lexis 135447.

## CONCLUSION

For the reasons set forth in the foregoing discussion, I RECOMMEND that the Court remand for further proceedings consistent with the foregoing discussion.

---

[2] Perhaps the Appeals Council will be able to provide a framework analysis that avoids a further hearing. In any event, the Court is not in the business of advocacy.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

June 14, 2012