UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| GREGORY MARSHALL TURCOTTE, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:11-CV-00377-GZS |
| SOCIAL SECURITY ADMINISTRATION COMMISSIONER, | ) ) ) | |
| Defendant | ) ) | |

**RECOMMENDED DECISION ON DEFENDANT'S MOTION TO ALTER OR AMEND**

Following the issuance of the Report and Recommended Decision on Gregory Marshall Turcotte's complaint for judicial review of the denial of social security benefits, the Commissioner filed a motion requesting that I alter or amend the Report and Recommended Decision pursuant to Rule 59(e), alleging errors of law and alternatively requesting either that I change my recommendation to "affirm" instead of "remand" or else amend the Recommended Decision "to identify what specific non-exertional limitations . . . the ALJ should have included in the RFC and would have required the ALJ to take testimony from a vocational expert." (Mot. to Alter or Amend at 4, ECF No. 20.) Turcotte objects to the motion on substantive grounds, but does not challenge it procedurally. (Pl.'s Obj., ECF No. 21.) Concluding that the motion is most appropriately construed as a motion requesting clarification, the following discussion is offered to clarify the Recommended Decision. I further amend the schedule to permit the filing of an objection by either party within 14 days of this Supplement to the Recommended Decision.

The Rule 59(e) motion has been used in several courts to address post-judgment challenges to orders adopting or rejecting recommended decisions,[1] but I have not been able to identify any practice of magistrate judges making substantive alterations or amendments to reports and recommended decisions on the basis of a Rule 59 motion. Rule 59(e) concerns judgments, not recommended decisions. Moreover, if there is error, either factual or legal, then an objection to the recommendation would ordinarily be the best approach to addressing the error, as the district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]." 28 U.S.C. § 636(b)(1)(C). The concern, of course, is that sustaining a motion like the instant motion will generate a new motion practice in social security cases, creating even greater delay for claimants. Even in an exceptional case, the proper approach would be to request leave to file such a motion and to request modification of the deadline for filing an objection. Otherwise, the failure to file a proper objection in the absence of leave might be treated as a waiver of objection. Thomas v. Arn, 474 U.S. 140, 150 (1985). In the absence of this approach, the Commissioner (or the plaintiff) should simply raise the alleged errors or ambiguity in an objection directed to the district court judge, who then would have the authority to "recommit the matter to the magistrate [judge] with instructions," should the judge so choose. 28 U.S.C. § 636(b)(1)(C).

Notwithstanding the foregoing, assuming for the sake of argument that a motion for "reconsideration" or "clarification" is properly advanced in this circumstance, I will address the concern raised by the Commissioner. The gist of the Commissioner's motion is that he reads the recommended decision to state that remand is necessary because vocational expert testimony is required to explain that a claimant with an RFC limited to simple and sedentary work has substantial work capacity. (Mot. at 1.) That is a mischaracterization of the recommended

---

[1]     E.g., Moore v. Astrue, No. 2:06-CV-04867-LDD, 2008 U.S. Dist. Lexis 60327 (E.D. Pa. 2008).

decision.  The recommended decision is not to the effect that it was error for the ALJ to place Turcotte in the simple and sedentary category as part of his RFC finding, but rather to the effect that it was error for the ALJ to make the lay assumption that doing so would resolve any remaining concerns over additional non-exertional physical limitations identified by the experts who assessed Turcotte's likely physical residual functional capacity.[2]  The point of the recommended decision is that the ALJ glossed over these specific, additional physical limitations by placing Turcotte in the sedentary category and assuming that this would render negligible any remaining non-exertional physical limitations, without articulating why the non-exertional limitations are vocationally irrelevant.  This approach allowed the ALJ to directly apply the Grids, when it appears that the medical evidence calls for a framework analysis.

At step 5, the burden shifts to the Commissioner to demonstrate that a significant number of jobs exist in the national economy that the claimant could perform.  20 C.F.R. §§ 404.1520(g), 416.920(g); Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Goodermote v. Sec'y of HHS, 690 F.2d 5, 7 (1st Cir. 1982).  Ordinarily, the Commissioner will seek to meet his step 5 burden "by relying on the testimony of a vocational expert" in response to the hypothetical question of whether a person with the claimant's residual functional capacity, age, education, and work experience would be able to perform other work existing in the national economy.  Arocho v. Sec'y of HHS, 670 F.2d 374, 375 (1st Cir. 1982).  In some cases, however, the question of whether a claimant can transition to other work is determined, in whole or in part, by comparing the claimant's residual functional capacity and vocational factors to standards set out in the Commissioner's Medical-Vocational Guidelines, Appendix 2 to 20 C.F.R. Part 404, Subpart P, §

---

[2]     The Recommended Decision could have been clearer that the issue is with the non-exertional physical limitations rather than mental limitations.  Turcotte's organic brain disorder limits him in relation to cognition and the restriction to simple work is supported by Dr. Stahl's opinion, which supplies substantial evidence in support of a finding that Turcotte does not have an additional "mental health" disorder or limitation.  On the other hand, the discussion in the Recommended Decision is clearly focused on the experts' assessments of Turcotte's physical capacity.  (Report and Recommended Decision at 3-4.)

200.00 (the "Grids").  The Grids are rules adopted by the Social Security Administration to streamline the decision-making process when claimants meet certain functional and vocational profiles.  Pursuant to the Guidelines:  "Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled."  Id. § 200.00(a).  However, the Grids assume that a claimant's physical capacity allows for the performance of the entire range of work functions across one or more exertional categories (sedentary, light, medium, heavy).  Where the claimant also has so called "non-exertional" limitations, the Guidelines do not direct an outcome, but can "provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations."  Id. § 200.00(e)(2).  In such cases "full consideration must be given to all of the relevant facts in the case in accordance with the definitions and discussion of each factor in the appropriate sections of the regulations, which will provide insight into the adjudicative weight to be accorded each factor."  Id.  The Commissioner may not rely on the Grids for even a framework decision when there are non-exertional limitations that "significantly affect [a] claimant's ability to perform the full range of jobs" at a given exertional level.  Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (citation and internal quotation marks omitted).  But if the Commissioner can explain why a claimant's nonexertional limitations do not significantly erode the occupational base, i.e., "impose no significant restriction on the range of work a claimant is exertionally able to perform," then the Commissioner may decide the issue based on the framework of the Grids, without consulting a vocational expert.  Id.

> Whether . . . the [Commissioner] can satisfy his burden under step five without resorting to vocational evidence depends on how closely the claimant's

> characteristics and the Grid criteria overlap. [T]he Grid is meant to reflect the
> potential occupational base remaining to a claimant in light of his strength
> limitations. If a non-strength impairment, even though considered significant, has
> the effect only of reducing that occupational base marginally, the Grid remains
> highly relevant and can be relied on exclusively to yield a finding as to disability.
> Yet the more that occupational base is reduced by a nonexertional impairment, the
> less applicable are the factual predicates underlying the Grid rules, and the greater
> is the need for vocational evidence.

Id. at 524-25 (footnote omitted).

In this case, the identified non-exertional limitations are postural and environmental

limitations and they include a limitation to only occasional ramps, stairs, balancing, kneeling,

and crawling; no ladders, ropes, or scaffolds (R. 369, 386); and no irregular or sloping work

surfaces or unprotected heights (R. 371, 388). There is also a push/pull limitation of

"occasional" with the left lower extremity, which is technically another "exertional" limitation

(R. 368). The ALJ, without discussion, found that Turcotte's physical RFC consists of a

sedentary work capacity with no non-exertional limitations and directly applied the Grids to find

Turcotte not disabled. It was in making all of the non-exertional physical limitations disappear,

without explanation, that the ALJ erred. It appears that the ALJ may have thought that by

selecting sedentary rather than light or medium as the proper limit on physical exertion he would

adequately account for any additional non-exertional limitations from a vocational standpoint.

That may well be so, but if that is something that can be established by reference to the

Commissioner's regulations, other persuasive vocational references, or to persuasive legal

precedent, then it calls for a "framework" discussion of why these limitations have a negligible

impact on the sedentary work base.

The resulting question, which is not resolved in the Recommended Decision, is whether

the Commissioner might be able to articulate why a denial of benefits would nevertheless result,

pursuant to a framework analysis, even if the additional non-exertional physical limitations

5

identified by these experts were credited in an RFC finding.  If the Commissioner cannot do that in his objection (having failed to do it yet),[3] then the matter should be remanded for further evidentiary development.  If the Commissioner can supply that missing discussion in his objection, then it may well be appropriate for the Court to affirm the administrative decision and to find, as a matter of law, that the identified non-exertional physical limitations do not reduce the sedentary occupational base more than marginally.  <u>Ortiz v. Sec'y of Health & Human Servs.</u>, 890 F.2d 520, 524-25 (1st Cir. 1989).

CONCLUSION

Construed as a motion for clarification and for modification of the scheduling order, the motion is granted and the Recommended Decision is supplemented with the foregoing discussion.  The objection period will be as provided in the following Notice.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

July 26, 2012                               /s/ Margaret J. Kravchuk
                                            U.S. Magistrate Judge

---

[3]       The Commissioner references Social Security Ruling 85-15 as a sort of cure all, but a review of that Ruling does not explain why all of the non-exertional physical limitations identified by the experts would be of negligible consequence in relation to the sedentary occupational base.  At most, a review of the Ruling indicates that crawling is an "extremely rare factor" in sedentary work.  1985 SSR Lexis 20, *6, 1985 WL 56857, *2.